# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY DOCKET UNIT

2017 FEB 28   AM 11: 29

**CITIZENS FOR RESPONSIBILITY AND
ETHICS IN GOVERNMENT,**

       Plaintiff,

   v.                                Civil Action No: 1:17cv00458

**DONALD J. TRUMP**, in his official capacity
as President of the United States of America,

       Defendant.

## BRIEF AMICUS CURIAE OF MARK RICHARDS IN SUPPORT OF DEFENDANT

    Mark Richards, Pro Se, submits his amicus curiae brief in the above-entitled civil action in

support of Defendant stated particularly below.



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2-27-17

## TABLE OF CONTENTS

I.  INTERESTS OF AMICUS CURIAE                                    3

II.  INTRODUCTION                                                 6

III.  PLAINTIFF LACKS STANDING TO PROSECUTE HIS CLAIMS            8

IV. PLAINTIFF'S CLAIMS ARE FRIVOLOUS AND VEXATIOUS              11

V.  CONCLUSION                                                   15

## I. <u>INTERESTS OF AMICUS CURIAE</u>

Mark Richards ("Amicus") is a citizen of the United States of America and subject to the governance of Donald J. Trump as the 45th President of the United States ("President Trump"). Amicus contends that his rights, privileges and immunities, which are guaranteed by the Constitution of the United States and the laws of the United States, are adversely affected by this civil action commenced by Plaintiff against President Trump.

History has established that the discharge of the office of the President of the United States in a manner to benefit the citizens of the United States is an extraordinarily difficult, exceedingly complex, and especially time consuming.  <u>See</u> <u>Clinton v. Jones</u>, 520 U.S. 681, 711 (1992) ("[a] sitting President is unusually busy, that his activities have an unusually important impact upon the lives of others ....").  History has also established that when the President is distracted from the task of governance, the citizens of the United States suffer serious adverse consequences.  <u>See</u> <u>United States v. Nixon</u>, 506 U.S. 224, 226-27 (1993) ("On May 10, 1989, the House of Representatives adopted three articles of impeachment for high crimes and misdemeanors ... first two articles charged Nixon with giving false testimony before the grand jury and the third article charged him with bringing disrepute on the Federal Judiciary").  <u>See also</u> <u>The Impeachment Trial of President William Clinton</u>, Douglas O. Linder ("civil suits against a sitting president had the serious potential to be a major distraction from the president's duties. (2005); <u>IMPEACHMENT: THE LEGACY; Effects on the Presidency Uncertain, but Certainly Lasting</u>, David E. Rosenbaum (1998) ("Marshall Wittmann, a scholar at the Heritage Foundation, said the consequences of a Clinton impeachment might have been more severe at a different time

in the nation's history -- before the end of the cold war, for instance, or during an economic crisis.").

Amicus believes that given the current divided political landscape in American and the intention of President Trump to heal that divide, it will take the full measure of his efforts to fulfill his promise made at his Inauguration to radically reform the government to benefit the people. Amicus further believes that he is entitled under our form of government to President Trump's undivided attention and efforts in his governance of the United States. Also, as the duly elected President of the United States, President Trump is entitled to an opportunity to discharge the duties of his office to the best of his ability without unnecessary distraction. Amicus also believes that the Constitution grants this opportunity to the President and that his oath of office demands that he discharges his duties to the best of his ability. Amicus also believes that these grants and entitlements establish that President Trump not be distracted from his duties by Plaintiff's frivolous and vexatious claims in this action.

Amicus also believes the primary evil that the Framers sought to avoid through the Emoluments Clause, that is bribery of an American public official by a foreign government, is not extant in this case and that Plaintiff's interpretation of the Clause strains credulity. This is so because in 1776 when the Framers drafted our Constitution America was a different place than it is now. Our country was in its infancy and democracy as the Framers envisioned was a noble cause but one that was untested. The effort of the Colonists to gain their independence necessitated that they obtain monetary and military assistance from foreign governments. From this it can be said that the Framers intended the purpose of the Emoluments Clause to be to prevent manipulation of our fledgling government through instances of quid pro quo bribery

4

of government officials or by undue influence first by nations who believed that their involvement in our fight for independence gave them that prerogative and then by those nations who believed that they could take advantage of our inexperience with national sovereignty.  History shows that the Framers did not intend that the Emoluments Clause was meant to proscribe instances of what is now being referred to as "fair market exchanges" between America's government officials and foreign governments or their agents."  And since the inception of the Clause, the Supreme Court has never attributed an application to the Clause that forbids "fair market exchanges" between American government officials and foreign governments.

History, however, has provided a guide as to how to apply the Emoluments Clause in this case.  In 2013, John Kerry, a Democratic Senator, was nominated for Secretary of State and at that time was married to Teresa Heinz.  Teresa Heinz at that time was the owner of H. J. Heinz Co., an organization with global reach, which in 2013 had a market value of $23.3 billion. As part of the confirmation process and in response to what the Office of Government Ethics ("OGE") determined to be conflicts of interest involving Kerry and his wife's assets, he offered to refrain from personally participating in any matter that had a direct effect on his financial interests or those of his wife and also offered to recuse himself from certain matters involving the H.J. Heinz Co. to resolve the OGE claim that Kerry labored under conflicts of interest.  See Bryan Bender, "Kerry to Divest Some Financial Holdings" Boston Globe, Jan. 23, 2013.

In the Security and Exchange Commission 10K Report for 2013 submitted by the H. J. Heinz Company, it stated that it owned 35 trademarks which operated 37 separate brands in Europe, Asia, Latin America, and other foreign countries that produced a combined revenue for

2013 of $5.9 billion.   The report also stated that, among other business activities in foreign

countries, the company engaged in foreign currency swaps and incurred charges against

revenue for factory closings in South Africa and Venezuela in the amounts of $259 million.  See

H. J. Heinz Corporation II (2014) 10K Annual Report. [1]  It appears to Amicus and it is plainly

evident that the steps taken by President Trump in resigning his position as Chief Executive

Officer of the Trump Organization and its associated entitles to resolve the claims of his

conflicts of interest are identical to the actions taken by Secretary Kerry to satisfy the OGE

inquiry during his confirmation.  It further appears to Amicus that the steps taken by Kerry, a

Democrat, to become conflict free in order to be confirmed as Secretary of State are not

according to Plaintiff sufficient for President Trump, a Republican, to be become conflict free to

occupy the Oval Office as the duly elected 45th President.

Amicus finally contends that his interest in this civil action arises because as an

American citizen he is entitled to the best governance that President Trump can provide and

that having to defend against this action while in office will prove to be distraction to the

President which will deprive Amicus of the best governance that President Trump can provide.

## II. <u>INTRODUCTION</u>

Plaintiff alleges that the real estate ventures, media production company, and brand

licensing agreements of President Trump are creating "countless" conflicts of interest and as

the results of those conflicts President Trump is subject to "unprecedented influence by foreign

governments."  Plaintiff further alleges that as the results of those conflicts and foreign

---

[1] Reported at https://www.sec.gov/Archives/edgar/data/000160508/1500011/hnz10k122814.htm.

influence, President Trump is in violation of the "Foreign Emoluments Clause" of the Constitution of the United States.

It is clear from the nature of Plaintiff's claims that defending against this action will be extraordinarily difficult and very time consuming for President Trump. This is so first because, as Plaintiff acknowledges, President Trump's real estate ventures are "vast and complicated" and because of this it is reasonable to presume and Amicus believes that Plaintiff will submit vast and complicated discovery and inspection requests.  This is apparent because involved discovery and inspections requests can and do significantly burden the party to which those requests are directed so much so that Congress has mandated that the Federal Rules of Civil Procedure provide relief from such requests and sanctions against the party making such requests.  Amicus contends that although in most cases the threat of relief from burdensome discovery and inspection requests and sanctions for such are successful, the effort necessary to obtain such relief and sanctions which is obtained only after protracted pleading that is aside from pleadings necessary to defend against the original claims urged, is an evil in itself. Amicus further contends because of the contentious circumstances of this case discovery and inspection of this nature is a dilatory tactic that Plaintiff could utilize if he would decide to go "nuclear" in his prosecution of this case.  It appears to Amicus that there must exist an enormous amount of information concerning President Trump's more than fifty years in the real estate development business which Plaintiff could seek to discover.  Amicus believes that discovery and inspection in this case with its collateral litigation could reasonably be expected to span the entire of four-year term of President Trump. This circumstance would render Plaintiff's claims for declaratory and injunctive relief moot well prior to any trial.  This is so

because Plaintiff's claims would not survive after President Trump leaves office because after

his term of office is concluded in January of 2020 and if he does not elect to seek a second term

or if he is not elected to a second term, he, as a private citizen would no longer be subject to

the proscriptions of the Emoluments Clause.  The Plaintiff and the distinguished counselors who

represent Plaintiff are fully aware of these circumstances and Amicus cannot help but pose the

question in order to aid the Court in its disposition of this case are Plaintiff and his counselors

attempting to unnecessarily burden President Trump's governance of the United States during

the next four years or attempting to influence the President's decision of whether to seek a

second term of office.

In recent history, President William Clinton was named as a Defendant in a civil action in

federal court and that court determined, albeit that President Clinton was not immune from

damages based on actions that occurred prior to his assuming the Office of the President, the

action in which he was named as a defendant would impose such a distraction in the discharge

of his duties as President that the trial of that civil action should be delayed until the President

left office.  As the basis for its decision, the district court determined that it must consider the

Supreme Court's edict that Presidential responsibilities are to be given the utmost deference

and that the high respect which is owed to the Office of the Chief Executive is a matter that

should inform the conduct of the entire proceeding, including the timing and scope of

discovery.  See Clinton v. Jones, 520 U.S. 681, 707 (1997).  See also Jones v. Clinton, 1994 WL

721905 at *7-*8 (E.D. Ark., Dec. 28, 1994).  Furthermore, the United States Supreme Court

determined upon review of the district court's decision to stay the trial but to allow discovery

to occur during President Clinton's term of office that the separation of powers doctrine does

not require federal courts to stay all private actions against the President until he leaves office and federal courts only have power to determine the legality of the President's unofficial conduct during the President's term of office. <u>Jones</u>, 520 U.S. at 705 (1997). It is evident to Amicus, and illustrative of Plaintiff's vexatious intentions underlying this action, that a constitutional scholar such as Professor Lawrence Tribe, who is one CREW's attorneys in this lawsuit, is aware that the Federal Rules of Civil Procedure provide and United States Supreme Court precedent mandates that only discovery and inspection occur during President Trump's term of office and that same precedent would absolutely stay any trial until after President Trump leaves office either four or eight years from now.

Amicus also contends that separation of powers doctrine stays Plaintiff's claims against President Trump. This is so because Plaintiff's claims are based solely on the official conduct of the President and as such he is entitled to absolute immunity from damages, which in this case would constitute Plaintiff's legal fees. Amicus finally contends that requiring President Trump to defend against Plaintiff's claims will distract him from the task of governance at hand which in itself will negatively impact the rights, privileges, and immunities enjoyed by Amicus. This is so because those rights, privileges, and immunities are greatly affected by the quality and quantum of President Trump's governance.

### III. PLAINTIFF LACKS STANDING TO PROSECUTE HIS CLAIMS

Plaintiff directly alleges that he has a factual basis for standing under the Case and Controversy Clause of the Constitution of the United States because "there has been a concrete and demonstrable injury to the organization's activities, with the consequent drain on the

organization's resources."  Plaintiff also indirectly alleges that he has a legal basis for standing

under the Case and Controversy Clause as a tester.

Amicus contends that Plaintiff's claim that a factual basis for standing exists by reason of

an injury to his organization's activities and resources is specious and disingenuous.  Plaintiff

claim is that because he has been required to answer numerous inquiries from various sources

about the Emoluments Clause as it pertains to President Trump his resources have been

drained and activities burdened to the extent that he is no able to function properly as a

governmental watchdog organization.  Plaintiff's claim is specious and disingenuous simply

because inquiries involving the Emoluments Clause and any President or other governmental

officials are part and parcel of the normal course of Plaintiff's chosen business due to his

decision to organize as a non-profit organization. Amicus contends that there are no

constitutional provisions, statutes, or rules that require Plaintiff to serve as a not-for-profit

governmental watchdog on behalf of the citizens of the United States.  It appears to Amicus

that in this instance Plaintiff is attempting to have the knife cut both ways in his standing

argument and as "red herring" to draw attention away from his specious argument that he has

standing in this action.

Amicus also contends that Plaintiff's claim that a legal basis for standing exists by reason

of being a tester is disingenuous.  This is so because the theory upon which Plaintiff bases his

standing as a tester, which he states is established in Havens Reality Corp. v. Coleman, 455 U.S.

363 (1982), does not fit within the facts of this case.  In Havens Reality Corp., the Supreme

Court determined that the testers had standing to commence their cause of action in federal

court under 42 U.S.C. §3604 on the basis of that narrowly drawn and clear federal statute which

prohibits "racial steering" by renters or sellers of housing property towards persons seeking to rent or purchase such housing and also creates a private right of action for its violation.  Id. at 367-70.

In this case, Plaintiff does not and cannot claim that he has been subjected to racial steering, or any other form of discrimination, as the results of President Trump's business ventures.  Also, Plaintiff does not and cannot establish that the Emoluments Clause creates a private right of action under which he can bring his claims against President Trump. Accordingly, given the dissimilar facts of this case and of those in Havens Reality Corp., the district court cannot determine that Plaintiff has standing as a tester of the Emoluments Clause.

Amicus contends for the foregoing reasons, that Plaintiff's contention that he enjoys both a factual and a legal basis for standing cannot and do satisfy the demanding standard under which Plaintiff labors to claim standing under the Case and Controversy Clause.

## IV. PLAINTIFF'S CLAIMS ARE FRIVOLOUS AND VEXATIOUS

Rule 11 of the Federal Rules of Civil Procedure, requires that: "the signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11.  The Supreme Court of the United States has determined that a complaint is frivolous where "it lacks an arguable basis either in law or in fact." Denton v. Hernandez, 504 U.S. 25, 31 (1992).  The United States Court of Appeals for the Second Circuit

has determined that a claim is vexatious where it employs, among other things, "tactics of harassment," In re Martin-Trigona, 6 F.3d 226, 230 (2ⁿᵈ Cir. 1993), and United States District Court for the Southern District of New York has determined a claim is vexatious where the party who commenced the action believes himself "the victim of conspiracies where none exist, and to suspect without any reasonable basis that others are persecuting him," Martin-Trigona v. Brooks & Holtzman, 551 F. Supp. 1378, 1384 (S.D.N.Y. 1982).

Amicus contends that Plaintiff's claims are factually and legally frivolous. This is so because Plaintiff's claims fail to put forth any specific, non-conclusory allegations which could establish improper motives of President Trump involving quid pro quo bribery of the President by a foreign government involving his real estate ventures from which he derives income that were directly overseen by him prior to becoming President and the which are directly overseen by Donald Trump, Jr., Eric Trump and Allen Weisselburg since becoming President.

This is so because the facts of this case establish that nine days prior to assuming office, President Trump, in a show of good-faith, removed himself from overseeing directly or indirectly any of the real estate ventures with which he was associated prior to his election. The facts of this case further establish that upon his resignation from those real estate ventures, he announced that his sons and his chief financial officer would henceforth hold title to and manage those ventures. Amicus further contends that President Trump's voluntary resignation and the appointment of his sons and a company executive to oversee his real estate ventures clearly establish that his motives regarding the future operation of his real estate ventures and the revenue produced by those ventures are clearly above board. This is so because despite his life-long involvement as a hands-on manager of those ventures to the

benefit of himself and his family, President Trump stated that he resigned from his position so he could devote his complete attention to governance of the United States as President and to specifically avoid any conflicts of interest and the appearance of improprieties.

Amicus further contends that it appears that under Plaintiff theory of this case that because he operates a non-profit governmental watchdog organization it is his responsibility to somehow protect or shield the American people from any wrongdoing on the part of President Trump.  It further appears to Amicus that under Plaintiff's theory of this case he believes himself to be a victim of the conspiracy orchestrated by President Trump involving his revenue sources, which is made worse by the President's decision to withhold disclosure of his income tax returns, all of which ultimately causes the drain on his organization's resources.  Amicus contends that Plaintiff's conspiracy theory is too convenient and was manufactured solely to shoehorn his claim of standing to commence this action.  Amicus also contends that because improper motives on the part of President Trump regarding the manner in which he managed his involvement in his real estate ventures both before and after he was elected to the Presidency are not evident, Plaintiff's allegations fail completely to establish any factual basis for his claims set out in his complaint thus rendering his complaint frivolous.

Plaintiff admits in his complaint that the Emoluments Clause has never been clearly interpreted by the Courts of the United States.  Amicus also contends that because of the absence of judicial guidance concerning the application of the Emoluments Clause as it pertains to a President, it is not clear whether the doctrine of absolute immunity would cloak President Trump if he was found to be in violation of the Emoluments Clause as alleged because Plaintiff's allegations center on the President's official duties.

Plaintiff further admits that his application of the proscriptions of the Emoluments Clause to the facts of this case is based entirely on the "traditions" recognized by past Presidents. Amicus contends that President Trump is not bound in any manner by the traditions recognized by past Presidents in regard to the operation of the Emoluments Clause. In fact, it was President Trump's pledge to the American people at his Inauguration to completely break from the traditions followed by past Presidents in his governance of the United States. Amicus also contends that Plaintiff's theory of the case that President Trump is somehow legally bound to following those traditions in order to avoid entanglement with the Emoluments Clause. Amicus also contends that Plaintiff's reasoning herein fails to establish any legal basis for his claims set out in his complaint thus rendering his complaint frivolous.

Amicus further contends that Plaintiff's claim that President Trump must liquidate his real estate holding and place the proceeds in a blind-trust to avoid violating the Emoluments Clause are simply mean spirited and un-American thus clearly illustrating the vexatious nature of Plaintiff's complaint. This is so because total liquidation of the President's real estate holdings would deprive the President's ten-year old son, Barron Trump, of the privilege and opportunity of someday presiding over the real estate ventures created by his father and it would also deprive the President's adult sons, Donald and Eric of the same privilege and opportunity.

Amicus also contends that it appears that the purpose of Plaintiff's complaint is to obtain President Trump's tax return in discovery and inspection and that most certainly the President's tax return will be among the very first of Plaintiff's discovery requests. It further appears to Amicus that if Plaintiff is successful in obtaining the President's tax return, that it will

be immediately "leaked" or otherwise "published" by him.  And as the distinguished counselors who represent Plaintiff know, President Trump is under no legal obligation to release his tax returns thus rendering his complaint vexatious.

Amicus further contends that Plaintiffs' allegations against President Trump are so lacking in credible supporting evidence, such as a Security and Exchange Commission 10K Report, documents provided by President Trump to the Federal Elections Commission, or other documents, that it must be concluded that his complaint was initiated in bad faith regardless of the fact that prior to its commencement it must have been clearly apparent to Plaintiff and his counselors that the only "evidence" on their claims were their own self-serving, contradictory, and conclusory allegations that President Trump was in violation of the Emoluments Clause thus rendering his complaint vexatious.

Amicus finally contends that the relief requested by Plaintiff further illustrates the vexatious and frivolous nature of his complaint.  This is so because even if President Trump were found liable for violating the Emoluments Clause, the sole remedy would not be a declaration or an injunction but would be impeachment and Plaintiff absolutely lacks standing to function as an independent counsel or to commence impeachment proceedings against President Trump.  This is so because as Plaintiff and his distinguished counsel are fully aware only the Office of the Independent Counsel can convene a grand jury for findings which allege that President Trump committed an impeachable offense and only the House of Representatives can draft articles of impeachment against President Trump and only the Senate can conduct the trial of those articles to impeach the President thus again rendering his complaint frivolous and vexatious.

## CONCLUSION

For the foregoing reasons, amicus curiae prays that this Court find that Plaintiff lacks

standing to commence his complaint and that his complaint is frivolous and vexatious.

DATED: ___2/6/17_____

Mark Richards, Amicus Curiae
611 ½ Pennsylvania Ave NE
Washington DC 20006
Tel: 202-930-5417
Email: merdrive6@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RECEIVED
SDNY DOCKET UNIT

2017 FEB 28  AM 11: 29

CITIZENS FOR RESPONSIBITY AND
ETHICS IN GOVERNMENT,

       Plaintiff,

     v.                                      Civil Action No: 1:17cv00458

DONALD J. TRUMP, in his official capacity
as President of the United States of America,

       Defendant.

### MOTION FOR LEAVE TO FILE BRIEF AMICUS CURIAE OF
### MARK RICHARDS IN SUPPORT OF DEFENDANT

     Mark Richards, Pro Se, hereby moves for leave to file the accompanying amicus curiae

brief in the above-entitled civil action in support of Defendant stated particularly below.

     1.  Mark Richards ("Amicus") is a citizen of the United States of America and is subject to

the governance of Donald J. Trump as the 45th President of the United States as his governance

affects rights, privileges and immunities Plaintiff enjoys under the Constitution of the United

States and laws of the United States.

     2.  The fundamental standard for submission of an amicus brief is whether it "will aid in

the determination of the motion [] at issue." James Square Nursing Home, Inc. v. Wing, 897 F.

Supp. 682, 683 (N.D.N.Y. 1995) aff'd, 84 F.3d 591 (2d Cir. 1996). Among some other roles of

amici are, "[s]ome friends of the court are entities with particular expertise not possessed by

any party to the case. Others argue points deemed too far-reaching for emphasis by a party

1

intent on winning a particular case. Still others explain the impact a potential holding might have on an industry or other group." Neonatology Associates, P.A. v. C.I.R., 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.).

      3.  Amicus can assist the court in reaching its decision on the issue of whether Plaintiff has standing and on the issue of whether the allegations in the complaint are frivolous and vexatious.  Amicus can offer his unique perspective as an ordinary citizen of the United States of America as to how the distractions of defending against Plaintiff's civil action, as this will affect the President's ability to faithfully undertake the business of the people of the United States, will diminish the ability of the President to discharge his duties.

      4.  The views of an amicus may align with those of one of the parties. Concerned Area Residents for the Environment v. Southview Farm, 834 F. Supp. 1410, 1413 (W.D.N.Y. 1993), quoting Hoptowit v. Ray, 682 F.2d 1237, 1260 (9th Cir. 1982) ("[T]here is no rule . . . that amici must be totally disinterested.").  Indeed, in the origins of amicus briefing, an interest was mandatory and the United States Supreme Court established a criterion for amicus to be "interested in some other pending case involving similar questions." Northern Securities Co. v. United States., 191 U.S. 555 (1903) (rejecting brief because, inter alia, there was no such interest).  Moreover, although "[a]n amicus . . . is not a party to the litigation and participates only to assist the court, [n]evertheless, 'by the nature of things an amicus is not normally impartial' . . . and 'there is no rule . . . that amici must be totally disinterested.'" Waste Mgmt., Inc. v. City of York, 162 F.R.D. 34, 36 (M.D. Pa. 1995) (quoting United States v. Gotti, 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991).  See also Concerned Area Residents for the Environment v. Southview Farm, 834 F. Supp. 1410, 1413 (W.D.N.Y. 1993)).

For the foregoing reasons, amicus curiae prays that the Court grant this motion for leave to file the accompanying amicus curiae brief.

DATED: 2|6|17

Mark Richards
611 ½ Pennsylvania Ave NE
Washington DC 20006
Tel: 202-930-5417
Email: merdrive6@gmail.com
Amicus Curiae Pro Se

## CERTIFICATE OF SERVICE

Plaintiff hereby certifies that on February 6, 2017, I filed the foregoing MOTION FOR

LEAVE TO FILE BRIEF AMICUS CURIAE OF MARK RICHARDS IN SUPPORT OF DEFENDANT with the

Clerk of the Court for the United States District Court, Southern District of New York, 500 Pearl

St., New York, New York _10007_, by U.S. Mail, and with Matthew Spurlock, _1735 20th_

Street NW, Washington, DC _20009_, counsel for Plaintiff, by hand-delivery.


Mark Richards, Amicus Curiae
611 ½ Pennsylvania Ave NE
Washington, DC 20006
Tel: 202-930-5417
Email: merdrive6@gmail.com

CLERK, U.S. DISTRICT COURT
500 PEARL ST FL8
NEW YORK, NY 10007

RECEIVED
SDNY DOCKET UNIT
2017 FEB 28 AM 11:29







RICHARDS
ENSYLVANIA AVE SE
TON, DC 20003