UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, RESTAURANT OPPORTUNITIES CENTER (ROC) UNITED, INC., JILL PHANEUF, AND ERIC GOODE,<br><br>         Plaintiffs,<br><br>       - v -<br><br>DONALD J. TRUMP,<br>IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES OF AMERICA,<br><br>         Defendant. | 17 Civ. 458 (GBD) |

*AMICUS CURIAE* SCHOLAR SETH BARRETT TILLMAN'S AND
PROPOSED *AMICUS CURIAE* JUDICIAL EDUCATION PROJECT'S
RESPONSE TO AMICI CURIAE BY CERTAIN LEGAL HISTORIANS

Robert W. Ray
THOMPSON & KNIGHT LLP
900 Third Avenue, 20th Floor
New York, NY 10022
Telephone: 212-751-3347
Email: robert.ray@tklaw.com
*Co-counsel for Amicus Curiae*
*Scholar Seth Barrett Tillman*

Josh Blackman
*Pro Hac Vice*
1303 San Jacinto Street
Houston, TX 77002
Telephone: 202-294-9003
Email: Josh@JoshBlackman.com
*Counsel of Record for Amicus Curiae*
*Scholar Seth Barrett Tillman*

Carrie Severino
 Admission *pro hac vice* pending
Judicial Education Project
722 12th St., N.W., Fourth Floor
Washington, D.C. 20005
Telephone: 571-357-3134
Email: carrie@judicialnetwork.com
*Counsel for Proposed Amicus Curiae*
*Judicial Education Project*

In 1792, Alexander Hamilton was directed by the Senate to provide a list of the "emoluments" of "every person holding any civil office or employment under the United States." He sent a response in 1793, which we refer to as *The Complete Report*. It did not list the President, Vice President, or other elected officials. The 1793 *Complete Report* is a contemporaneous construction of substantially the same language at issue in the Constitution's Foreign Emoluments Clause. There is a second document: *The Condensed Report*. That document was drafted based in large part on *The Complete Report*. The Tillman Amicus ("Amicus") brief explained that this latter report was not signed by Alexander Hamilton, it was not dated, and it was drafted by an unknown Senate functionary. In other words, its precise provenance remains unknown in the sense that we simply cannot identify the specific person who drafted it.

The Brief of Amicus Curiae by Certain Legal Historians contends that Tillman's "brief overlooks a key Hamilton manuscript that undercuts its thesis and belies its description of archival material."[1] The Legal Historians allege that that *The Condensed Report* was signed by Hamilton and it is equally authentic with the original document, *The Complete Report*.[2] The Legal Historians Brief is plainly wrong. *The Condensed Report* is nothing more than a scrivener's copy of *The Complete Report*, drafted after Alexander Hamilton's death. In ruling on whether the President holds "Office . . . under the United States," this Court should rely on *The Complete Report*, which was signed by Hamilton, and not the unsigned and undated *Condensed Report*.

---

[1] Docket Entry #70-1 at 22 n.80. The Legal Historians include: Professor Jack N. Rakove (Stanford University, Department of History), Professor Jed Handelsman Shugerman (Fordham Law School), Professor John Mikhail (Georgetown University Law Center), Professor Gautham Rao (American University, Department of History), and Professor Simon Stern (University of Toronto).

[2] *Id.*

**I.**     *The Complete Report Was Signed by Alexander Hamilton*

In 1792, the Senate issued an order directing President Washington's Secretary of the Treasury, Alexander Hamilton, to draft a financial statement listing the "emoluments"[3] of "*every person holding any civil office or employment under the United States.*"[4]  The Senate order's "office or employment under the United States" language is at least as wide, if not substantially wider, than the Foreign Emoluments Clause's "Office of Profit or Trust under [the United States]" language. Hamilton took more than nine months to draft and submit a response, which spanned some ninety manuscript-sized pages. The document included appointed or administrative personnel in *each* of the three branches of the federal government, including the Legislative Branch (e.g., the Secretary of the Senate and Clerk of the House and their staffs) and also the clerks of the federal courts.[5] Amicus refers to this document as *The Complete Report*.[6] Hamilton's carefully worded response, which the editors of the *Papers of Alexander Hamilton*

---

[3] Consistent with the longstanding interpretation of "emoluments," Hamilton's *Complete Report* listed only the "compensation or pecuniary profit derived from a *discharge of the duties*" of the listed officers. *See Hoyt v. U.S.*, 51 U.S. (10 How.) 109, 135 (1850) (emphasis added). Contrary to the plaintiffs' anachronistic attempt to redefine this term, Hamilton's report did not list financial gain arising from private business transactions, precisely because they are not "emoluments." Here, the language of "emoluments" is expressly tied to "office" and "employment." Indeed, this is how the word was most commonly used at time of the ratification. *See* James Phillips & Sara White, *The Meaning of Emolument(s) in 18th-Century American English: A Corpus Linguistic Analysis,* 59 So. Tex. L. Rev. __ (forthcoming 2018), https://ssrn.com/abstract=3036938.

[4] 1 Journal of the Senate of the U.S.A. 441 (1820) (May 7, 1792 entry) (emphasis added), bit.ly/2rQswt8.

[5] *See Report on the Salaries, Fees, and Emoluments of Persons Holding Civil Office Under the United States (Feb. 26, 1793), in* 14 The Papers of Alexander Hamilton ("*PAH*"), 157, 157–59 (1969).

[6] The Transmittal Letter of *The Complete Report* appears at Exhibit K and at http://bit.ly/2xkY1Pc. The Cover Letter of *The Complete Report* appears at Exhibit L and at http://bit.ly/2fj6IQ0. Annexes I, II, and IV-XVIII of *The Complete Report* appears at Exhibit M and at http://bit.ly/2eV95bn. Annex III of *The Complete Report* appears at Exhibit N and at http://bit.ly/2h1kdre. Lastly, Annex XIX of *The Complete Report* appears at Exhibit O and at http://bit.ly/2fiX00f.

indicated was a *signed* document, that is, signed by Hamilton, did *not* include the President, Vice President, Senators, or Representatives.[7]

## II.   *The Condensed Report Was Not Signed By Alexander Hamilton*

In his brief, for which the Court granted leave [ECF No. 39], Amicus cited *The Complete Report*, which goes far to establish that the first Secretary of the Treasury determined that the President does not hold an "office . . . under the United States" [ECF No. 37 at 19 n.76]. Amicus noted that there is an "an entirely different document (but bearing a similar name)" that was "not signed by Hamilton," was "undated," and was instead "drafted by an unknown Senate functionary." [*Id.*] For convenience, we call the original document *The Condensed Report*, which was reported and reproduced in *American State Papers*.[8] The editors of the Papers of Alexander Hamilton were aware of this other document, but the editors did not mark it as "signed" by Hamilton.[9]

Tillman posted accurate photoduplicates of portions of *The Complete Report* and *The Condensed Report* along with their typeset reproductions on the Internet about five years ago,[10] and came to the conclusion and has written that the latter document was a scrivener's copy—the

---

[7] A reproduction of *The Complete Report's* Cover Letter in the *Papers of Alexander Hamilton* appears at Exhibit Q and at http://bit.ly/2vU9QZ8. *The Complete Report* was drafted in long hand; the reproduction in the *Papers of Alexander Hamilton* is typeset.

[8] *The Condensed Report* appears at Exhibit P and at http://bit.ly/2xknN6j. A reproduction of *The Condensed Report* in *American State Papers* appears at Exhibit R and at http://bit.ly/2h41iZr. *The Condensed Report* was drafted in long hand; the reproduction in *American State Papers* is typeset.

[9] *See* Exhibit Q (*Papers of Alexander Hamilton*) at 159 n.3.

[10] *See* bepress (last visited Sept. 7, 2017), https://works.bepress.com/seth_barrett_tillman/203/ (click "Related Files"). *See* Exhibit B, Letter from Kate Mollan, Center for Legislative Archives, National Archives and Records Administration, to Seth Barrett Tillman (June 7, 2017), http://bit.ly/2h1BgcT; *see* Exhibit C, Letter from Kate Mollan, Center for Legislative Archives, National Archives and Records Administration, to Seth Barrett Tillman (August 17, 2017), http://bit.ly/2x1Nzf1.

antebellum equivalent of a photocopy—which was not signed by Hamilton.[11] The Tillman Amicus brief candidly explained that "[b]oth documents are probative of the legal meaning of *Office . . . under the United States . . .* [b]ut the two documents are not equally probative."[12] Until this litigation, Tillman's conclusions and the provenance of these documents had never been in dispute.

### III. *Counsel for Plaintiffs and Their Amici Mistakenly Contend That Alexander Hamilton Signed The Condensed Report*

In a 447-word footnote, a group of Legal Historians alleged that Amicus's brief "overlooks a key Hamilton manuscript that undercuts its thesis and belies its description of archival material." [ECF No. 70-1 at 22 n.80]. The Legal Historians were referring to *The Condensed Report*. These Legal Historians added that "[w]e have confirmed these archival findings with a separate visit to the archive" where they inspected "the 1793 signed Hamilton manuscript." [*Id.*] The Legal Historians charged Amicus with "incorrectly describ[ing] the [Condensed Report] as 'unsigned' and 'undated.'" [*Id.*]

The Legal Historians would lead this Court to believe that Alexander Hamilton personally signed *The Condensed Report*, and that, because that fact undercuts Amicus's theory of the case, Amicus misrepresented, or at least, misunderstood the document and its provenance.

Here, Amicus submits two sworn declarations by leading experts in the field of authenticating founding-era documents, and three other experts in regard to Alexander Hamilton. The experts uniformly agree: Amicus is correct. The signature on *The Condensed Report* is not

---

[11] *See* Seth Barrett Tillman, 5 Brit. J. Amer. Leg. Studies 95, 106, 109-10 n. 25, 33 (2016) (peer reviewed), https://ssrn.com/abstract=2679512 ("reporting a nearly identical document in American State Papers"); s*ee also* Seth Barrett Tillman, Loyola University of Chicago Law School Annual Constitutional Law Colloquium, Conference Paper, *Six Puzzles for Professor Akhil Amar* at 14, n. 60 (2012), https://ssrn.com/abstract=2173899 (referring to "the original Hamilton-authored document and its subsequent reproductions"); Professors Zephyr Rain Teachout and Akhil Reed Amar—Contradictions and Reconciliation 65–70 & n.117 (2012), http://ssrn.com/abstract=1970909 (same). *See Declaration of Seth Barrett Tillman* at Exhibit D and at http://bit.ly/2we6DI3, ¶¶ 25–44.

[12] Docket Entry #37 at 19 n.76.

Alexander Hamilton's.[13] It does not bear any of the characteristics of his penmanship. Further, the experts agree with Tillman that *The Condensed Report* was not drafted in 1793, and was drafted long after Hamilton's death in 1804.[14]

John P. Kaminski has been editing *The Documentary History of the Constitution* since 1969 and his work has been cited by the United States Supreme Court as well as by Plaintiffs and their Amici.[15] Kaminski agreed with Amicus-Tillman concerning the provenance of *The Complete Report* and *The Condensed Report*:

> 15. Historical documentary editors regularly face the task of identifying the authorship and dating documents in determining what documents to publish in their volumes, what documents should be relegated to annotation, and what documents should be excluded altogether. I have been making these kinds of decisions for almost fifty years. After examining the two reports, it seems clear to me that one interpretation is possible. I agree with the editors of the Hamilton Papers that The Complete Report is an original Hamilton document while The Condensed Report is a later copy.
>
> 16. Both lengthy reports were written by scriveners. The Complete Report was signed by Alexander Hamilton himself. I base this opinion in substantial part on my professional judgment as to what Hamilton's signature looked like. The Condensed Report also contains the words "Alexander Hamilton" where a signature might appear, but this "signature" was clearly not written by Hamilton himself. Rather, the words "Alexander Hamilton" were written by the same scrivener who transcribed The Condensed Report. Endorsements or marginalia on both

---

[13] *See* experts in regard to authentication of founding-era documents: Declaration of Professor Kenneth R. Bowling, Ph.D. at Exhibit H and at http://bit.ly/2joTCoU; Declaration of John P. Kaminski at Exhibit G and at http://bit.ly/2xE5VnV, ¶¶ 10–12. *See* experts in regard to Alexander Hamilton: Declaration of Professor Stephen F. Knott at Exhibit I and at http://bit.ly/2h3g4mZ, ¶¶ 6–7; Declaration of Professor Robert W.T. Martin and at http://bit.ly/2fj51Cq, ¶¶ 11–13; Declaration of Michael E. Newton at Exhibit E and at http://bit.ly/2xZoAqb, ¶¶ 10–11; Supplemental Declaration of Michael E. Newtown at Exhibit F and at http://bit.ly/2h3PAhs, ¶¶ 8–9.

[14] *See id. Newton Declaration* at ¶ 9; *id. Kaminski Declaration* at ¶ 17; *id. Bowling Declaration* at ¶ 15; *id. Martin Declaration* at ¶¶ 14–15. Amici's fifth expert, Knott, did not put forward substantial comments on *The Condensed Report*'s authenticity or date; rather, his comments were primarily directed towards *The Complete Report* and other related matters.

[15] *Id. Kaminski Declaration* at ¶ 2, 7. *See, e.g.*, Brief of Constitutional Accountability center as *Amicus Curiae* in Support of Respondent at 10, *Spokeo, Inc. v. Robins*, No. 13-1339 (U.S. Sept. 8, 2015) (filed by Elizabeth B. Wydra, Esq. & Brianne J. Gorod, Esq.), 2015 WL 5244346 (citing Kaminski); Brief of Professors [Laurence H. Tribe, Esq. and others] of Constitutional Law and Federal Jurisdiction as *Amici Curiae* in Support of Petitioners at 6 n.7, *Boumediene v. Bush*, Nos. 06-1195, 06-1196 (U.S. Aug. 24, 2007), 2007 WL 2441580 (same); Professor Jack N. Rakove, *The Original Intention of Original Understanding*, 13 CONST. COMMENT. 159, 163 n.12 (1996) (same); Jack N. Rakove, *The Super-Legality of the Constitution, or, a Federalist Critique of Bruce Ackerman's Neo-Federalism*, 108 YALE L.J. 1931, 1935 n.13 (1999) (same); Jack N. Rakove, *Rights Talk in the Past Tense*, 52 STAN. L. REV. 1865, 1879 n.71 (2001) (book review) (same).

documents assist in determining the genesis of The Condensed Report. The markings on The Complete Report in pencil indicate that the report was "To be condensed & printed. See page Journal 441 & 497." The page numbers refer to the relevant dates of 7 May 1792 and 27 February 1793 located in the 1820 printed edition of the U.S. Senate Journal published by Gales & Seaton. The back of The Condensed Report is docketed: "2 Cong No. 34 2 Sess. Condensed." Beneath the word "Condensed" appears: "Report from Secretary of the Treasury with names & compensation of all Officers in the civil employ of the Government, 1793 Feb 27—Series 10 No. No. [sic] 34 Miscellaneous." A separate notation indicates: "Condensed by Order of the Secretary of the Senate."

17. These markings clearly indicate that sometime after 1820 (probably near 1833), the Secretary of the U.S. Senate ordered that a condensed version of The Complete Report be made. Transcribed by a clerk of the Senate, The Condensed Report was then printed in the first miscellaneous volume of American State Papers, published in 1834. Hamilton was long since dead by 1820. Thus Alexander Hamilton had no direct connection with The Condensed Report.[16]

The Legal Historians have made a serious mistake by failing to distinguish between an authentic document and a copy that was drafted a generation later. This error was not an errant mistake in a scholarly journal, but one reviewed and vetted in a court pleading.

Further, Amicus asks the Court to take judicial notice that the Legal Historians incorporated by reference other submissions by parties in this litigation. First, the Legal Historians cited a post on the *Take Care* blog by Brianne J. Gorod,[17] who serves as counsel for Amicus Senator Richard Blumenthal and Representative John Conyers, Jr. [ECF No. 63]. Like the Legal Historians, Gorod asserted that Tillman described *The Condensed Report* "in grossly misleading terms in order to discount its significance," writing that his argument is "not accurate, not even remotely so."[18] Second, the Legal Historians cited an additional post on the *Take Care* blog by Joshua Matz,[19] who is both the publisher of that site,[20] and serves as counsel for

---

[16] *Id. Kaminski Declaration* at ¶¶ 15–17. *See also Bowling Declaration* at ¶¶ 11–16.

[17] *See* Brianne J. Gorod, *What Alexander Hamilton Really Said*, Take Care (June 7, 2017), https://perma.cc/YCY8-XQC9.

[18] *Id.*

[19] Joshua Matz, *Foreign Emoluments, Alexander Hamilton & a Twitter Kerfuffle*, Take Care (July 12, 2017), https://perma.cc/66Z7-VY76.

Plaintiffs.[21] Matz's post repeated Gorod's claims verbatim. Though he only recently joined the firm of Gupta Wessler PLLC, Matz has been working on this case pro bono for the Plaintiffs since the early days of the litigation.[22] Other counsel for Plaintiffs have echoed these charges in public fora.[23]

This effort by counsel for Plaintiffs and their Amici to discredit Amicus-Tillman's argument has backfired, and illustrated their disregard of historical best practices. Plaintiffs and their Amici have demonstrated that they are unable to properly identify and characterize primary sources—sources which no objective or fair-minded observer could actually confuse. As important as that task is, they have conducted no apparent due diligence to determine the authenticity of the purported Hamilton signature on *The Condensed Report*, and the document's creation date.

IV. ***The Court Should Rely on The Complete Report, and not The Condensed Report, in Determining Whether the President Holds "Office . . . Under the United States"***

In determining whether the Foreign Emolument Clause's "office … under [the United States]" language reaches the President, the Court should rely only on the 1793 *Complete Report*,

---

[20] Contributors: Joshua Matz, Take Care, https://takecareblog.com/contributors/joshua-matz. *See* Marcia Coyle, *Maybe Not an 'Anti-Trump Firm,' but Still Suing the White House Often*, National Law Journal (Aug. 22, 2017), http://at.law.com/2rZbiF("Matz said the [*Take Care*] blog is a forum for progressive lawyers 'to talk about difficult issues which also helps form relationships that can lead to amicus briefs and other interventions.'").

[21] Matz signed the Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss on August 4, 2017. *See* Docket Entry #57.

[22] *See* Coyle, *supra* note 20 ("This month, the firm brought on a new lawyer—Joshua Matz, of counsel . . . . Matz began working pro bono on challenges to Trump's travel ban and the emoluments clause litigation. In that work, he said, he developed relationships with lawyers at Gupta Wessler, and found the firm 'the right place for me.'"). *See also* Laurence H. Tribe, Joshua Matz, Deepak Gupta, and Jonathan E. Taylor, The Courts and the Foreign Emoluments Clause, CaseText (Jan. 30, 2017), http://bit.ly/2vUXxeY.

[23] *See* Tillman Declaration, *supra* note 12 at ¶¶ 8–14 (citing statements from Laurence H. Tribe and Ambassador (Ret.) Norman L. Eisen). *See* Laurence Tribe (@tribelaw) on Twitter, *A National Archives visit obliterates @SethBTillman's thesis that DJT isn't covered by the Foreign Emoluments Clause* (Aug. 1, 2017, 6:48 am) https://twitter.com/tribelaw/status/892381453312503808; Norm Eisen (@normeisen) on Twitter, *devastating @BrianneGorod rebuttal of "evidence" for fringe claim that emoluments clause doesnt apply to POTUS* (July 6, 2017, 7:28 am), https://twitter.com/NormEisen/status/882969451557249025; Laurence Tribe (@tribelaw) on Twitter, *Read this devastating reply to the weird claim that Hamilton thought Presidents could accept Foreign Emoluments* (July 6, 2017, 8:00 am), https://twitter.com/tribelaw/status/882977561986420736.

which was drafted and signed contemporaneously with the Constitution itself. The fact that Alexander Hamilton did not think the President held an "office . . . under the United States" is some substantial reason for this Court to conclude that the President does not fall within the scope of the Foreign Emoluments Clause, which uses substantially the same *office* language. By contrast, *The Condensed Report*, which was not signed by Hamilton, and which was drafted after his death by unknown Senate functionaries, is largely irrelevant to the legal issues connected to the instant litigation.

Dated: New York, New York
September 19, 2017

Respectfully submitted,

By: /s/ Robert W. Ray
Robert W. Ray
THOMPSON & KNIGHT LLP
900 Third Avenue, 20th Floor
New York, NY 10022
Telephone: 212-751-3347
Email: robert.ray@tklaw.com
*Co-Counsel for Amicus Curiae*
*Scholar Seth Barrett Tillman*

Josh Blackman
*Pro Hac Vice*
1303 San Jacinto Street
Houston, TX 77002
Telephone: 202-294-9003
Email: Josh@JoshBlackman.com
*Counsel of Record for Amicus Curiae*
*Scholar Seth Barrett Tillman*

Carrie Severino
   Admission *pro hac vice* pending
Judicial Education Project
722 12th St., N.W., Fourth Floor
Washington, D.C. 20005
Telephone: 571-357-3134
Email: carrie@judicialnetwork.com
*Counsel for Proposed Amicus Curiae*
*Judicial Education Project*

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2017 I caused a true and correct copy of the foregoing to be served on all counsel of record through the Court's CM/ECF system.

/s/ Robert W. Ray
Robert W. Ray, Esq.
