

*Issues & Appeals*

December 1, 2017

The Honorable George B. Daniels,
United States District Court
Southern District of New York
500 Pearl Street,
New York, NY 10007

Re:   *Citizens for Responsibility and Ethics in Washington, et al. v. Trump*,
      No. 1:17-cv-00458-GBD

Dear Judge Daniels,

  We write in response to the defendant's November 24, 2017 letter informing the Court that the owner of the Trump SoHo announced that it intends to terminate its management agreement with the Trump Organization early. The letter argues that "[t]his development undermines the hospitality Plaintiffs' reliance on alleged competition with the Trump SoHo to demonstrate standing."

  In focusing on one Trump facility in one city, the defendant ignores his other hotel in New York City, his five restaurants in New York City, his six event and meeting spaces in New York City, his restaurant in the District of Columbia, and his numerous event and meeting spaces in D.C., all of which compete with multiple hotels, restaurants, and event and meeting spaces in which the hospitality plaintiffs have a financial interest. This competition is described in declarations of five fact witnesses, a hotel industry expert, and a restaurant industry expert. The hospitality plaintiffs' competition with these other Trump facilities is more than enough to establish their standing. Indeed, standing would exist in this case if one plaintiff facility competed with one Trump facility.[1]

  The plaintiffs' hotel industry expert, Rachel Roginsky, has opined in an unrebutted declaration that the Trump International Hotel New York competes with the Bowery Hotel in which the plaintiff Eric Goode has an ownership interest (*see* Decl. of Rachel J. Roginsky, ISHC ¶¶ 24–29, ECF No. 58; *see also* Decl. of Eric Goode ¶¶ 1, 4 ("I believe the Bowery competes directly with … the Trump International, including for government business."), 5–12, ECF No. 52.

---

[1] The defendant relies on a recent *Business Wire* article to assert that the Trump Organization's management and license agreement with the Trump SoHo will terminate early. Though the defendant and/or the Trump Organization would possess any termination agreement, and would have the ability to produce a declaration attesting to the facts on which he relies, he provides the Court with neither. The Court thus does not know whether, for example, any termination agreement provides for future payments to the Trump Organization, whether any such payments are tied to the hotel's revenues or profits, and what conditions, if any, must be met for any termination agreement to close. The defendant has not foreclosed the possibility that he has an ongoing financial interest in the hotel's revenues.

Gupta Wessler PLLC
**1900 L Street, NW, Suite 312, Washington, DC 20036**
**P** 202 888 1741   **F** 202 888 7792
guptawessler.com

 *Issues & Appeals*

The plaintiffs' restaurant industry expert, Christopher C. Muller, Ph.D., has opined in an unrebutted declaration (see Sections IV, V, and VII) that:

- Amali, a member of plaintiff Restaurant Opportunities Centers United (ROC), competes with Trump Grill (located in the Trump Tower in New York City) and with Nougatine (located in Trump International Hotel New York), and Amali's meeting and event spaces compete with Trump Tower Atrium, Trump Grill, and the Trump Bar (all located in the Trump Tower), with Jean-Georges and Nougatine (both located in the Trump International Hotel New York), and with the Trump Executive Boardroom, the Business Center Boardroom and the Function Room (all located in the Trump International Hotel New York) (see Decl. of James Mallios ¶¶ 4 ("I believe Amali competes for business, including government business, with Trump Grill … and with Nougatine …. I believe it also competes with the Trump Tower Atrium, the Trump Grill and the Trump Bar … and with Nougatine and Jean-Georges … for corporate, government and transient event and meeting business."), 5–18, ECF No. 51);

- Amali Mou, a ROC member, competes with Trump Café (*see* Mallios Decl. ¶ 19 ("I believe Amali Mou competes with Trump Café …."), 20–23);

- ROC members Café 2, Terrace 5 and The Espresso Bar compete with Trump Café and Trump Ice Cream;

- ROC member The Modern competes with Trump Grill and Jean-Georges, and The Modern's meeting and event spaces compete with Trump Tower Atrium, Trump Grill, the Trump Bar, the Trump Executive Boardroom, the Business Center Boardroom and the Function Room;

- ROC member Riverpark competes with Trump Grill and Jean-Georges, and Riverpark's meeting and event spaces compete with Trump Tower Atrium, Trump Grill, the Trump Bar, Jean-Georges, Nougatine, the Trump Executive Boardroom, the Business Center Boardroom, and the Function Room (*see* Decl. of Thomas Colicchio ¶¶ 15–20, 21 ("I consider Jean-Georges and Nougatine to be competitors of Riverpark, particularly with respect to private events."), ECF No. 49);

- ROC member Gramercy Tavern competes with Jean-Georges, and Gramercy Tavern's private dining room competes with the event and meeting spaces in the Trump International Hotel New York;

- ROC member Craft competes with Jean-Georges, and Craft's private dining room competes with the meeting and event spaces in Trump International Hotel New York (*see* Colicchio Decl. ¶¶ 8–13, 14 ("I consider Jean-Georges and Nougatine to be competitors of Craft."));

- The Riggsby, which provides food service for events at the Carlyle Hotel, where the plaintiff Phaneuf books events, and Casolare Ristorante + Bar, which provides food service for events

 *Issues & Appeals*

at the Glover Park Hotel, where the plaintiff Phaneuf also books events, both compete with meeting and event spaces at the Trump International Hotel Washington, D.C. (*see* Decl. of Jill Phaneuf ¶¶ 2 ("I believe the event spaces at the Carlyle Hotel compete directly for corporate, government, and transient banquet business with event spaces at the Trump International Hotel Washington, D.C."), 3–11, 12 ("I believe the event spaces at the Glover Park Hotel compete directly for corporate, government and transient banquet business with event spaces at the Trump International Hotel Washington, D.C."), 13–19, ECF No. 53); and

- Minibar, Jaleo, and Zaytinya, each a restaurant where some members of ROC work, compete with BLT Prime (located in Trump International Hotel Washington, D.C.). Jaleo and Zaytina also compete with meeting and event spaces in the Trump International Hotel Washington, D.C.

In short, as shown by multiple, unrebutted declarations, the hospitality plaintiffs compete with several Trump facilities in both New York City and Washington, D.C.  Because standing in this case can be based on competition between a single plaintiff facility and a single Trump facility, *cf. Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008) (noting that even an injury worth "only a dollar or two" is sufficient to support Article III standing), the alleged early termination of the Trump Organization's license and management agreement with Trump SoHo is of no moment.

Respectfully submitted,

*/s/ Deepak Gupta*
Deepak Gupta
*Counsel for Plaintiffs*

Cc: All counsel of record (via ECF)

Gupta Wessler PLLC
1900 L Street, NW, Suite 312, Washington, DC 20036
P 202 888 1741    F 202 888 7792
guptawessler.com